IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

PATRICK JOSEPH TERRY,          )
                                           )
           Petitioner,          )
                                           )
v.                                      )        Case No. CIV-06-840-F
                                           )
JUSTIN JONES, Director, *et al.*,    )
                                           )
           Respondents.       )

## <u>REPORT AND RECOMMENDATION</u>

The Petitioner is a state inmate seeking habeas relief under 28 U.S.C. § 2241 based on a prison disciplinary conviction. The Court should deny habeas relief.

## I.      BACKGROUND

After a hearing, authorities found Mr. Terry guilty on a disciplinary charge involving possession of drugs. Appendix, Appendix III, Attachment H (Aug. 14, 2006) ("Petitioner's Appendix"). Mr. Terry filed an administrative appeal, and the facility head and the Department of Corrections ("DOC") Director affirmed. *Id.*, Appendix III, Attachments I-K & N. The Petitioner appealed in state court, and the trial court and the Oklahoma Court of Criminal Appeals affirmed. *Id.*, Appendices I-IV, IX, XVIII. The present action followed and the Petitioner alleges:

- deprivation of procedural due process in the disciplinary hearing,

- insufficient evidence for the disciplinary findings,

- violation of the Fourteenth Amendment's Equal Protection Clause,

- invalidity of Okla. Stat. tit. 57 § 564.1 (2005 supp.), and

- error by the state courts in the appeal of the disciplinary conviction.

Petition at pp. 7-14 (Aug. 10, 2006) ("Petition"); Petition for a Writ of Habeas Corpus Memorandum of Law at pp. 7-49 (Aug. 14, 2006) ("Petitioner's Brief in Support"); Petitioner's Reply to Respondent's Response to Petition for a Writ of Habeas Corpus at pp. 4-12 (Oct. 13, 2006) ("Petitioner's Reply").[1]

II.    GROUNDS ONE, TWO, THREE, AND FOUR-DUE PROCESS

Mr. Terry alleges the following due process violations in his disciplinary proceedings:

- deficiency in the hearing officer's written statement,

- invalid composition of the hearing committee,

- failure to timely conduct the hearing,

- lack of evidence for the conviction, and

- denial of an opportunity to present evidence,

Petition at pp. 7-11; Petitioner's Brief in Support at pp. 7-32; Petitioner's Reply at pp. 4-9. The Petitioner's allegations lack merit.

A.    <u>Requirements for Due Process in a Disciplinary Hearing</u>

*Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974), imposes narrow procedural protections for inmates facing disciplinary charges. For procedural due process, prison

---

[1]    Mr. Terry also objects to the filing of a response by Mr. Ron Anderson on grounds that he is not the Oklahoma Attorney General. Petitioner's Reply at pp. 2-3. But the state attorney general is free to delegate the response to another attorney, such as Mr. Anderson.

officials need only give: (1) an advance written notice of the disciplinary charges, (2) an opportunity for the inmate to present evidence when these procedures would not compromise institutional safety and goals, and (3) a written statement concerning the evidence relied on for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. at 564-66.

In addition, a prison official's revocation of credits for a disciplinary offense must be supported by "some evidence." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454-55 (1985). This review "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary [official]." *Id.* at 455-56 (citations omitted).

B.     The Written Statement

The disciplinary hearing officer supplied the following explanation for the finding of guilt:

> The R/O clearly states that he found 2-packs of rolling papers, 2-bags of tobacco, 2-Stacker 2, 1-Neurontin, 1-Baclofen, 20 mg, 1-small white pill, 1-pink pill. Also during this hearing I/M Terry stated that his cell was a single cell. He lives in this cell alone. I/M Terry is responsible for that cell. Therefore this court finds you guilty of Poss./Manf. of Contraband 09-3X.

Petitioner's Appendix, Appendix III, Attachment H.

Mr. Terry alleges that the statement was deficient because it failed to:

- address actual possession of the contraband,

3

- identify the contraband, or

- address the existence of a prescription for the items.

Petition at p. 7; Petitioner's Brief in Support at pp. 8-10.  The alleged errors do not support habeas relief for two reasons.

First, Mr. Terry alleges violations of DOC policy,[2] but they would not support federal habeas relief.[3]

Second, the written statement fulfilled the procedural due process requirements of *Wolff v. McDonnell*, as it identified the evidence relied on for disciplinary action.  *See Wolff v. McDonnell*, 418 U.S. at 564-66; *see also supra* pp. 2-3.

C.    The Disciplinary Committee

Mr. Terry alleges that his hearing was conducted in violation of the federal constitution and state law because the disciplinary tribunal consisted of only a single person.  Petitioner's Brief in Support at pp. 10-13.  A violation of state law would not justify habeas

---

[2]    Petitioner's Brief in Support at pp. 9-10 (citing Department Inmate Disciplinary Procedures, OP-060125(IV)(D)(2)).

[3]    *See Godlock v. Fatkin*, 84 Fed. Appx. 24, 30, 2003 WL 22954301, Westlaw op. at 4 (10th Cir. Dec. 16, 2003) (unpublished op.) ("Petitioner does not have a cognizable claim for federal habeas relief based solely on the failure of LCF to follow particular regulations and directives [during the disciplinary process]." (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987))).

relief,[4] and the absence of multiple decision-makers would not implicate the federal constitution.[5]  As a result, the Court should reject the habeas claim.

D.     Timeliness

DOC policy provides: "The disciplinary process from the acceptance by the appropriate supervisor of the offense report to the conclusion of the disciplinary hearing will normally not exceed seven days excluding weekends and holidays."  Department Inmate Disciplinary Procedures, OP-060125(I)(B)(4) (eff. May 25, 2004).   Mr. Terry alleges deprivation of due process on grounds that:

- prison officials had violated *Wolff v. McDonnell* in notification of the seven day time limit,

- the hearing had taken place more than seven working days after acceptance of the offense report, and

- the state district court had erred in attributing the delay to the need for a supplemental investigation.

---

[4]     *See Burns v. Crouse*, 339 F.2d 883, 883 (10th Cir. 1964) (*per curiam*) ("Whether the Kansas statutes [entitle the petitioner to specific credits] is a matter of state law and raises no federal issue cognizable under habeas corpus.").

[5]     *Henderson v. Workman*, 2006 WL 2545815, Westlaw op. at 3 (W.D. Okla. Aug. 31, 2006) (Thompson, J., unpublished op.) ("Petitioner has presented no legal authority for the proposition that a prison disciplinary proceeding must be conducted or decided by a multi-person tribunal, and the Court is aware of none."); *accord Sales v. Murray*, 862 F. Supp. 1511, 1515 (W.D. Va. 1994) ("nothing in *Wolff* requires that an inmate be convicted by a 'panel' or 'body' comprised of more than one member"); *Cosby v. Purkett*, 782 F. Supp. 1324, 1331 (E.D. Mo. 1992) ("Plaintiffs' challenge to the constitutionality of the regulations allowing for a single person to be the decision-making entity is without merit." (citation omitted)); *Proffitt v. United States*, 758 F. Supp. 342, 346-47 (E.D. Va. 1990) (rejecting an inmate's claim that *Wolff* requires more than a single person to render a decision in disciplinary proceedings).

Petition at p. 9; Petitioner's Brief in Support at pp. 19-27; Petitioner's Reply at pp. 5-6.  The allegations do not support habeas relief.

Effect of *Wolff v. McDonnell*

Mr. Terry argues that an outdated form was used by prison officials to notify him of the seven day time period, violating the "notice" requirement in *Wolff v. McDonnell*.  Petitioner's Brief in Support at p. 22; Petitioner's Reply at pp. 5-6.  The Court should reject this argument.

According to the Petitioner, prison officials should have used a form stating that the disciplinary hearing would begin within seven working days of acceptance by the shift supervisor or unit manager.  Petitioner's Brief in Support at p. 22; Petitioner's Reply at pp. 5-6.  Mr. Terry argues that officials had utilized a different version of the form, which stated that the seven days would begin with the inmate's receipt of the report.  Petitioner's Brief in Support at p. 22; Petitioner's Reply at pp. 5-6.  The argument is invalid, as officials' alleged use of an incorrect form[6] would not violate *Wolff v. McDonnell*.

---

[6]     Mr. Terry was served with a version of the form that had become effective in August 2002.  *Compare* Petitioner's Appendix, Appendix III, Attachment A, *with* Department Inmate Disciplinary Procedures, OP-060125A (eff. Aug. 28, 2002); *cf. Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) ("This court can take judicial notice of agency rules and regulations.").  Officials revised the form in May 2004 to reflect that the seven days begin when the matter is accepted by the shift supervisor or unit manager.  *See* Petitioner's Appendix, Appendix XI.  The May 2004 version of the form was in effect at the time of the alleged disciplinary offense.

6

In *Wolff*, the Supreme Court did not address notice requirements about the time period for the disciplinary hearing. Instead, the Court required advance written notice of the charges against the inmate. *See supra* pp. 2-3. The record clearly reflects advance written notice of the charges,[7] satisfying *Wolff*.

<u>The Disciplinary Hearing Delay</u>

Mr. Terry alleges deprivation of due process through the failure to hold the hearing within seven days following acceptance of the report by a unit manager. Petitioner's Brief in Support at pp. 19-21; Petitioner's Reply at pp. 5-6.[8] According to the Petitioner, DOC policy created a liberty interest in the time period because "the seven day time limit rule contain[ed] language that [was] mandatory in nature . . . ." Petitioner's Brief in Support at p. 21. Mr. Terry is incorrect.

In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Supreme Court addressed the presence of a liberty interest, focusing on whether the language in the applicable prison regulation was "mandatory." *Hewitt v. Helms*, 459 U.S. at 471. But in *Sandin v. Conner*, 515 U.S. 472 (1995), the Court retreated from this approach, focusing on "the nature of the deprivation" rather than "the language of a particular regulation." *Sandin v. Conner*, 515 U.S. at 481.

---

[7]     *See* Petitioner's Appendix, Appendix III, Attachment A.

[8]     The form submitted to Mr. Terry indicated the seven day period would begin with his receipt of the report, which was June 23, 2005. Petitioner's Appendix, Appendix III, Attachment A. Under this theory, the June 28, 2005, hearing would have been timely. *See id.*, Attachment H. But a subsequent version of the form would have begun the seven day period with the unit manager's acceptance of the offense report, which was on June 16, 2005. *See supra* note 6; Petitioner's Appendix, Appendix III, Attachment A.

Under the Supreme Court's present approach, states can create liberty interests, but generally they are "limited to freedom from restraint which . . . impose[] atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Mr. Terry's claim is based solely on the prison policy's alleged "mandatory" seven day time period. *See* Petitioner's Brief in Support at p. 21. The Petitioner is mistaken because:

- mandatory language alone is insufficient to create a liberty interest,[9] and

- Mr. Terry has not demonstrated an atypical and significant hardship from the delay.

Accordingly, habeas relief is not warranted on the timeliness claim.[10]

---

[9] *See supra* pp. 7-8.

[10] *See Henderson v. Jones*, Case No. CIV-05-1486-T, slip op. at 8 (W.D. Okla. Apr. 28, 2006) (unpublished report and recommendation by magistrate judge, concluding that the petitioner would have obtained due process "even if the Department of Corrections [had] failed to strictly follow its own regulation here with regard to the timing of [the] [p]etitioner's [disciplinary] hearings"), *adopted*, 2006 WL 2545815 (W.D. Okla. Aug. 31, 2006) (unpublished order by district judge); *Wilson v. Evans*, Case No. CIV-05-546-T, slip op. at 6 (W.D. Okla. Aug. 26, 2005) (unpublished report and recommendation by magistrate judge, rejecting a petitioner's timeliness challenge to his disciplinary hearings because officials had complied with *Wolff*), *adopted* (W.D. Sept. 21, 2005) (unpublished order by district judge), *appeal dismissed*, 172 Fed. Appx. 227 (10th Cir. Mar. 22, 2006) (unpublished op.) (adhering to "substantially the same reasons set forth" by the magistrate judge and district judge); *see also Kirkland v. Provience*, Case No. CIV-93-509-T, 1995 WL 377088, Westlaw op. at 8 (W.D. Okla. Apr. 21, 1994) (unpublished report and recommendation by magistrate judge) ("The fact that the [prison] regulation allows for postponement of the hearing shows that it does not create substantive limitations or a liberty interest."), *adopted* (W.D. Okla. June 15, 1994) (unpublished order by district judge), *aff'd*, 60 F.3d 837, 1995 WL 377088 (10th Cir. Feb. 2, 1995) (unpublished op.).

<u>The State District Court's Determination</u>

Mr. Terry sought relief from his disciplinary conviction in state court. Petitioner's Appendix, Appendices I-IV. The state district court denied relief and the Oklahoma Court of Criminal Appeals affirmed. *Id.*, Appendices IX, XVIII. According to Mr. Terry, the district court relied on a misrepresentation by the state's attorney about the need for a supplemental investigation prior to the hearing. Petitioner's Brief in Support at pp. 21-27. But the Fourteenth Amendment's Due Process Clause does not require a hearing within seven working days of the acceptance of the referral by a unit manger. *See supra* pp. 7-8. Thus, even in the absence of a supplemental investigation or other justification for the delay, the state court's alleged error would not have involved a constitutional deprivation.

E.    <u>Existence of Evidence for the Disciplinary Conviction</u>

In convicting under Section 09-3, the hearing officer relied on two reporting officers' statements that they had discovered the following items during a "shakedown" of the Petitioner's cell:

- two packs of rolling papers,

- two bags of tobacco,

- two "Stacker 2" pills,

- one Neurontin,

- one Baclofen,

- one small white pill, and

- one small pink pill.

Petitioner's Appendix, Appendix III, Attachments B-C & H; *see supra* p. 3.  The Petitioner

alleges a lack of evidence for the disciplinary conviction.  Petitioner's Brief in Support at pp.

27-32; Petitioner's Reply at pp. 6-8.  The claim is invalid.

A conviction under Section 09-3 requires:

Possession/introduction of any drug, narcotic, intoxicant, chemical, to include
paperwork or documentation containing information for the manufacture of
intoxicants/drugs/illegal substances, drug paraphernalia not prescribed by
medical staff, or failure to take medication as prescribed.  Also includes
selling, trading, bartering, or giving prescribed medication/drugs to another
person.

Department Inmate Disciplinary Procedures, OP-060125, Attachment A, § 09-3 (eff. May

25, 2004).

The Petitioner interprets this section to involve three elements: (1) possession of, (2)

any drug, (3) not prescribed by medical staff.  Petitioner's Brief in Support at p. 28.  Based

on a statement by the DOC Director's Designee in a previous case, Mr. Terry also construes

the section to require identification of the item as a prescription drug.  *Id.*  According to the

Petitioner, the disciplinary conviction was unsupported by evidence because:

- prison officials had no proof of his possession,

- he had a prescription for the Baclofen and Neurontin, which exempted these
  drugs from Section 09-3, and

- none of the other items in the cell constituted a "drug" for purposes of Section
  09-3.

10

Petitioner's Brief in Support at pp. 5-6, 8-9, 28-32; Petitioner's Reply at pp. 7-9.  These claims lack merit.

### Evidence Regarding Possession

Mr. Terry argues that the contraband was found in a "common area," jointly occupied by up to 40 other inmates.  Petitioner's Brief in Support at p. 31.  As a result, the Petitioner claims that the hearing officer had no evidence of actual or constructive possession.  *Id.* at pp. 30-31.  But the hearing officer had evidence supporting a contrary determination.

Two prison officials, Officer Wren and Officer Stinnett, reported that the contraband had been found during a shakedown of Mr. Terry's cell.  Petitioner's Appendix, Appendix III, Attachment B.  Indeed, during the hearing, Mr. Terry admitted that he had resided alone in his cell.  *See* Audiotape of Disciplinary Hearing (filed Aug. 30, 2006).  Together, the officers' report[11] and the admission[12] constituted some evidence for a finding that Mr. Terry had possessed the items in question.

---

[11]     The Petitioner argues that the hearing officer needed "more evidence than the statement of the officer bringing the charge."  Petitioner's Reply at p. 4 (citation omitted).  Mr. Terry's argument is not supported by persuasive case law in this circuit.  *See Rhatigan v. Ward*, 187 Fed. Appx. 889, 891 (10th Cir. July 6, 2006) (unpublished op.) (investigating officer's report constituted "some evidence" to support a disciplinary conviction for possession of contraband); *Carter v. Workman*, 121 Fed. Appx. 793, 796 (10th Cir. Jan. 27, 2005) (unpublished op.) (hearing officer's reliance on a reporting officer's statement of events underlying the charge constituted "some evidence" to support the disciplinary conviction); *see also* Tenth Cir. R. 32.1(A) (allowing use of unpublished Tenth Circuit opinions for their persuasive value).

[12]     *See Gooch v. Ward*, 120 Fed. Appx. 756, 757 (10th Cir. Dec. 30, 2004) (unpublished op.) (a prisoner's admission constituted "some evidence" for a disciplinary conviction under Section 09-3).

Newly Discovered Evidence Concerning Prescriptions for the Baclofen and Neurontin

For a conviction under Section 09-3, the inmate had to "[p]ossess[] . . . any drug . . . not prescribed by medical staff."  Department Inmate Disciplinary Procedures, OP-060125, Attachment A, § 09-3 (eff. May 25, 2004).  Under this language, an inmate's possession of drugs that had been prescribed by medical staff would not support a disciplinary conviction.  Thus, Mr. Terry argues that prescriptions for the Baclofen and Neurontin exempted these drugs from Section 09-3.  Petitioner's Brief in Support at pp; 5-6; Petitioner's Reply at pp. 8-9.[13]  The Petitioner's argument is misguided based on the administrative record.

As discussed above, the Fourteenth Amendment's Due Process Clause required only the presence of "some evidence" for the disciplinary conviction.  *See supra* p. 3.  The hearing officer had three documents:

- an offense report stating that Mr. Terry "did not have prescriptions on any of the medication DOC listed,"[14] and

- two incident reports reflecting a statement by Nurse Pugh that Mr. Terry did not have a prescription for the pills found in his cell.[15]

---

[13]     During the pendency of this action, the Respondents submitted progress notes showing a two month supply of Neurontin and Baclofen on April 12, 2005.  Respondents' Objection to Petitioner's Application for Discovery, Exhibit 1 (Oct. 25, 2006).  If the Petitioner took one pill per day, he could have had one pill of each drug remaining on June 11, 2005, when the items were seized.

[14]     Petitioner's Appendix III, Attachment A.

[15]     Petitioner's Appendix III, Attachments B-C.

During the present action, the Respondents filed progress notes supporting the Petitioner's allegation that he had a prescription for the Baclofen and Neurontin. *See supra* p. 12 note 13. These notes cast substantial doubt on the truthfulness of the evidence presented to the hearing officer. But the constitutional issue is whether some evidence existed for the disciplinary decision,[16] and the Court must answer in the affirmative. Mr. Terry's dissatisfaction with the result is understandable and the Court should not condone prison officials' disregard for the evidence recently uncovered. But a "claim of newly discovered evidence, standing alone, cannot provide the basis for federal habeas relief." *Davis v. Crouse*, 183 Fed. Appx. 791, 794 (10th Cir. June 9, 2006) (unpublished op.); *see also Herrera v. Collins*, 506 U.S. 390, 400 (1993).[17] The new discovery of prescriptions for Baclofen and Neurontin might suggest error in the disciplinary decision, but would not support federal habeas relief. *See Ricker v. Leapley*, 25 F.3d 1406, 1409-10 (8th Cir. 1994) (*dictum*).[18]

---

[16]     *See supra* p. 3.

[17]     There the Supreme Court stated:

> Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding . . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact.

*Herrera v. Collins*, 506 U.S. at 400-401 (citations omitted).

[18]     Similar facts appeared in *Ricker v. Leapley*, 25 F.3d 1406 (8th Cir. 1994). There authorities found white powder in an inmate's cell and conducted a field-test, which led to a belief that the substance was cocaine. *See Ricker v. Leapley*, 25 F.3d at 1408. Based on this belief, authorities

Other Evidence Supporting the Disciplinary Conviction

As stated above, the disciplinary conviction was also based in part on the presence of two unidentified pills in the cell. *See supra* pp. 3, 9-10. This evidence independently justifies the disciplinary conviction.

According to Mr. Terry, Section 09-3 applies only if the contraband consists of items identified as a prescription drug. Petitioner's Brief in Support at p. 28; Petitioner's Reply at p. 4. The Petitioner makes this assumption based on findings in a prior case involving Section 09-3. Petitioner's Brief in Support at p. 28; *see supra* p. 10. There Mr. Terry faced an earlier disciplinary charge under Section 09-3 for possession of unidentified pills, and he insisted that they were vinegar pills. Petitioner's Appendix, Appendix III, Attachment R. On appeal, the DOC Director's Designee ordered a rehearing, stating:

> If the pills cannot be identified and determined to be a prescription drug, the charge of Possession/Manufacture of Contraband, 09-3, . . . is not the appropriate charge. Unless the pills can be identified as a prescription drug, the more appropriate charge would be Possession/Manufacture of Contraband, 09-6, possession of clothing or property not authorized by facility, to include possession of excess personal property.

---

found the inmate guilty on disciplinary charges involving possession of contraband and possession of narcotics which had not been prescribed by a prison doctor. *See id.* Authorities later conducted a laboratory test and found that the substance was an antidepressant rather than cocaine. *See id.* Nonetheless, officials allegedly continued to keep the inmate in punitive segregation. *See id.* at 1410. The federal appellate court held that no due process violation had taken place. *Id.* In *dicta*, the court pointed out that no constitutional violation existed in the disciplinary conviction because at that time, the hearing officer had some evidence to believe that the substance was cocaine. *Id.* The court explained: "The fact that [the inmate] may have been innocent of the charges does not raise a due process issue. 'The [C]onstitution demands due process, not error-free decision-making.'" *Id.* (citation omitted)).

*Id.*  Mr. Terry apparently believes that a similar rationale applies here, arguing that the unidentified pills would constitute "either class A or B contraband . . . ."  Petitioner's Brief in Support at p. 9.

The prior explanation is not applicable here, as the Director's Designee did not articulate a blanket rule prohibiting characterization of unidentified pills as "contraband" for purposes of Section 09-3.  Indeed, Ms. Guilfoyle was addressing only the substance involved in that case, and there the Petitioner claimed that the pills had consisted of vinegar purchased from the canteen.  Petitioner's Appendix, Appendix III, Attachment R.  In the present disciplinary hearing, the Petitioner did not present a similar argument.  *See* Audiotape of Disciplinary Hearing (filed Aug. 30, 2006).

Section 09-3 requires "[p]ossession . . . of any drug . . . not prescribed by medical staff."  Department Inmate Disciplinary Procedures, OP-060125, Attachment A, § 09-3 (eff. May 25, 2004).  The evidence indicated that Mr. Terry had the unidentified white and pink pills,[19] and he has not argued that he had a prescription for these items.  DOC policy does not differentiate between classes of drugs, and one could infer that the white and pink pills constituted "drugs" under Oklahoma law.[20]  Thus, the disciplinary conviction was

---

[19]     Petitioner's Appendix, Appendix III, Attachments A-C.

[20]     Oklahoma law defines a "drug" as:

> articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; articles, other than food, intended to affect the structure or any function of the body of man or other

independently supported by the Petitioner's possession of the unidentified white and pink pills.

F.     Documentary Evidence

Mr. Terry alleges denial of an opportunity to present documentary evidence at the disciplinary hearing and administrative appeal.  Petition at p. 8; Petitioner's Brief in Support at pp. 13-19.[21]  According to the Petitioner, he informed the investigator that "[m]edical [had] provide[d] all the meds listed" and that this statement required the investigator to check with the medical department.  *Id.* at pp. 14-15.

The Petitioner's argument reflects an unsupportable expansion of his entitlement under *Wolff*.  That decision provided a limited right to present documentary evidence.  *See supra* pp. 2-3.[22]  But *Wolff* did not require the investigator to obtain evidence from others that

---

animals; and articles intended for use as a component of any article specified in this paragraph; but does not include devices or their components, parts or accessories. It shall also include alcoholic and intoxicating liquor and beverages and tobacco.

Okla. Stat. tit. 70 § 1210.222 (2001).  Mr. Terry asserts that the white pill was either a Vitamin C tablet or a Colchicine .6 mg for gout, and the pink pill was a Vitamin B-12 pill or a Xantac 150 mg for acid reflux.  Petitioner's Appendix, Appendix I at pp. 3-4.  Mr. Terry lacks evidence for this assertion and his account would not foreclose characterization of the white and pink pills as "drugs" under Oklahoma law.

[21]    The Petitioner also states that he was not allowed to present evidence in a separate hearing involving a "Class A" offense.  Petitioner's Brief in Support at pp. 13-14.  The Court need not consider this claim, as Mr. Terry clarifies that his habeas petition challenges only the "Class X" conviction.  *See* Petitioner's Brief in Support at p. 14 ("What is germane to this instant proceeding is that Petitioner clearly tried to obtain necessary documentary evidence in this appeal process for the Class X offense.").

[22]    The investigator stated that he had not received any documentary evidence from Mr. Terry.  Petitioner's Appendix, Appendix VII, Attachment 3.  Even here, Mr. Terry does not argue that he had any documentary evidence for the hearing officer to consider.

might support Mr. Terry's account.  *See Abdulhaseeb v. Ward*, 173 Fed. Appx. 658, 661-62 (10th Cir. Mar. 27, 2006) (unpublished op.);[23] *see also Diaz v. McGuire*, 154 Fed. Appx. 81, 85 (10th Cir. Nov. 14, 2005) (unpublished op.) ("An adequate prehearing investigation is not among the minimum due process protections identified by *Wolff* and *Hill*." (citation omitted)).  Thus, the habeas claim is invalid as a matter of law.

## III.   GROUND FIVE-EQUAL PROTECTION

In his fifth ground, Mr. Terry alleges an equal protection violation from the loss of earned credits arising out of his status as a "Class X" offender.  Petitioner's Brief in Support at pp. 32-37.  "Class X" offenses do not result in a loss of credits for inmates who:

- have been sentenced to death or life imprisonment,

- are ineligible for credits,

- must serve at least 50% or 85% of their offenses, and

- obtain *Ekstrand* credits.

Petitioner's Brief in Support at pp. 33-34 & note 28.  His claim is self-defeating because:

---

[23]     There a prisoner was subjected to disciplinary sanctions.  *See Abdulhaseeb v. Ward*, 173 Fed. Appx. at 660.  He sought habeas relief, claiming in part that prison officials had failed to "conduct an independent investigation to discover exculpatory and mitigating evidence on his behalf . . . ." *See id.* at 661.  The Tenth Circuit Court of Appeals rejected the claim, as the petitioner had not requested witnesses and had not submitted documentary evidence.  *Id.* at 661-62.

- the inmates subject to unequal treatment are not similarly situated, and

- the State's classification of offenders was rationally based.

As the Petitioner concedes,[24] his claim requires proof that:

- he was "similarly situated" to the prisoners who had allegedly obtain more favorable treatment,[25] and

- the State lacked a rational basis for the difference in treatment.[26]

The Petitioner cannot satisfy either element.

First, the Petitioner acknowledges that the inmates allegedly being favored had been sentenced under different sentencing schemes.  As Mr. Terry explains, those prisoners did not lose earned credits for a "Class X" offense because they either had no such credits or would not have obtained earlier release with them.[27]  Thus, by definition, Mr. Terry was not similarly situated to the prisoners who had allegedly obtained more favorable treatment.  *See Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir.) (rejecting an equal protection claim as a matter of law because the prisoner plaintiff "was, by definition, not similarly situated to

---

[24]    Petitioner's Brief in Support at p. 35.

[25]    *See Grubbs v. Bailes*, 445 F.3d 1275, 1282 (10th Cir. 2006).

[26]    *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993) (in the absence of a fundamental right or a suspect class, "a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose" (citations omitted)).

[27]    *See* Petitioner's Brief in Support at p. 35 (discussing the inapplicability of "good time" and "earned credit earning ability" for prisoners with "a 100% 'flat' drug trafficking" crime), p. 36 (explaining that an offender convicted of child abuse or child rape "suffers *no loss* of earned credits because he has none" (emphasis in original)).

general population inmates [who had allegedly obtained more favorable treatment during his time in administrative segregation]"), *cert. denied*, __ U.S. __, 127 S. Ct. 675 (2006).  As this Court recently explained when it rejected a virtually identical habeas claim:

> By his allegations it is apparent that Petitioner is not similarly situated to the inmates whose credit earning abilities were not impacted by the 2004 amendment to Department of Corrections' policy OP-060125, because they are serving sentences under different schemes.  Petitioner does not allege that he is being treated differently than those inmates serving their sentences under the same scheme as him.

*Henderson v. Jones*, Case No. CIV-05-1486-T, slip op. at 11-12 (W.D. Okla. Apr. 28, 2006) (unpublished report and recommendation by magistrate judge), *adopted*, 2006 WL 2545815 (W.D. Okla. Aug. 31, 2006) (unpublished order by district judge).

Second, the classification bore a rational relationship to a legitimate governmental objective.  The State had a legitimate goal of protecting the public from inmates who had committed serious disciplinary infractions while in prison.  *See Stephens v. Thomas*, 19 F.3d 498, 499, 501 (10th Cir. 1994) (concluding that the State had a legitimate objective of protecting the public safety through forfeiture of good time credits).  "Class X offenses form the most serious class of prison misconduct and, besides disciplinary convictions for violation of specific city, state, or federal laws, include offenses like rioting; taking over part of the prison; resisting apprehension within the prison; selling drugs; threatening prison security; killing, raping, or intentionally harming others; setting fires; possessing weapons, firearms or drugs; and escape."  *Gamble v. Calbone*, 375 F.3d 1021, 1025 n.4 (10th Cir. 2004).  As a matter of law, a rational relationship existed between protection of public safety

and the State's decision to delay early release for inmates found guilty on disciplinary charges involving "the most serious class of prison misconduct . . . ." *Id.*[28]

The Petitioner argues that he had been treated differently than inmates who earned credits in other ways. Petitioner's Brief in Support at pp. 32-37. But Mr. Terry does not allege differential treatment between himself and the prisoners who are similarly situated. As a result, his equal protection claim is invalid as a matter of law.

IV.   GROUND FIVE-VIOLATION OF THE STATE CONSTITUTION AND THE *EX POST FACTO* CLAUSE

Mr. Terry also alleges that the imposition of mandatory sanctions for "Class X" offenders violates the Oklahoma Constitution and the *ex post facto* clause. Petitioner's Brief in Support at p. 34.

The Court need not address the *ex post facto* claim, as it is conclusory and the Petitioner does not allege any supporting facts. *See Body v. Watkins*, 51 Fed. Appx. 807, 810 (10th Cir. Oct. 16, 2002) (unpublished op.); *see also Longstreth v. Franklin*, Case No. CIV-05-1364-C, slip op. at 9 (W.D. Okla. Aug. 24, 2006) (unpublished report and recommendation by magistrate judge, stating that "treatment as a 'Class X' offender did not

---

[28]     Mr. Terry argues that more violent prisoners did not lose credits upon designation as "Class X" offenders. Petitioner's Brief in Support at p. 36. The Petitioner's argument is invalid because classifications do not lose their rationality simply because they are under-inclusive. *See Vance v. Bradley*, 440 U.S. 93, 108 (1979) ("Even if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a case like this 'perfection is by no means required.'" (citations omitted)); *see also Erznoznik v. City*, 422 U.S. 205, 215 (1975) (*dictum*) ("This Court frequently has upheld underinclusive classifications on the sound theory that a legislature may deal with one part of a problem without addressing all of it." (citation omitted)).

violate the *Ex Post Facto* Clause" (citation omitted)), *adopted* (W.D. Okla. Dec. 4, 2006) (unpublished order by district judge).

Reliance on the state constitution is misplaced because a violation would not entitle Mr. Terry to habeas relief.  *See supra* pp. 4-5 & note 4.

## V.    GROUND SIX-STATE COURT REVIEW OF THE DISCIPLINARY HEARING

Mr. Terry also alleges constitutional violations through the state courts' application of Okla. Stat. tit. 57 § 564.1 (2005 supp.).  Petition at p. 13; Petitioner's Brief in Support at pp. 37-49.  This claim is invalid for two reasons:

- the Petitioner lacks standing to challenge the need to exhaust the state law, and

- the alleged irregularities did not result in prejudice because the underlying claims lacked merit.

The Petitioner argues that inmates should not be required to exhaust habeas claims under Section 564.1.[29]  But neither the Respondents nor the Court have invoked Section 564.1.  *See* Respondents' Response to Writ of Habeas Corpus with Brief in Support at p. 2 (Aug. 29, 2006) ("State remedies are exhausted.").  As a result, Mr. Terry lacks standing to challenge the need to exhaust the judicial remedy provided in Section 564.1.[30]

---

[29]    Petitioner's Brief in Support at p. 40 ("requiring an inmate to seek a remedy and state exhaustion under Section 564.1 is futile"), p. 41 ("the requirement to exhaust a claimed violation arising from an adverse disciplinary finding for an Oklahoma inmate using 57 O.S. Supp. 2005, § 564.1 should be abandoned, as no remedy exists under this 'new law'"), p. 49 ("Because the 'new law' codified as 57 O.S. § 564.1 affords no adequate remedy to an Oklahoma State prisoner seeking relief from an adverse disciplinary proceeding, is unfairly restrictive, costly and does not meet the burden of Due Process imposed by the United States Constitution, the requirement that an Oklahoma State prisoner use such vehicle to exhaust should be abandoned.").

[30]    *See Worthen v. Franklin*, Case No. CIV-05-1090-C, slip op. at 2 (W.D. Okla. Jan. 9, 2006) (unpublished report and recommendation by magistrate judge, holding that a habeas petitioner

Even if the Petitioner had standing, Mr. Terry would not be entitled to habeas relief. On habeas review, the Court's role "is limited to examining the events that occurred in the proceedings leading up to the petitioner's conviction." *United States v. Dago*, 441 F.3d 1238, 1249 n.5 (10th Cir. 2006) (citations omitted). Thus, when due process violations take place in a proceeding, the remedy is merely reconsideration rather than invalidation of the underlying conviction. *See United States v. Wiktor*, 146 F.3d 815, 819 (10th Cir. 1998) (*per curiam*); *see also infra* p. 23 & note 31.

In the state petition for judicial review, Mr. Terry asserted claims involving:

- inadequacy of the written explanation for the disciplinary decision,

- failure to provide a disciplinary decision by a tribunal consisting of multiple persons,

- denial of the opportunity to present relevant documentary evidence,

- failure to provide a timely disciplinary hearing,

- lack of some evidence for possession of a drug not prescribed by medical staff, and

- denial of equal protection through the imposition of mandatory sanctions.

Petitioner's Appendix, Appendix II.  As discussed above, these claims are invalid on the merits.  *See supra* pp. 2-21.  Thus, even if due process violations had occurred in the state courts, the only available remedy would have been the same review ultimately undertaken

---

lacked "standing to contest the applicability or constitutionality of [Okla. Stat. tit. 57 § 564.1]" because it had not been invoked by the respondents), *adopted* (W.D. Okla. Jan. 25, 2006) (unpublished order by district judge), *appeal dismissed*, 186 Fed. Appx. 835 (10th Cir. June 30, 2006) (unpublished op.), *cert denied*, __ U.S. __, 127 S. Ct. 583 (U.S. Nov. 13, 2006).

in the federal habeas proceedings.  *See United States v. Wiktor*, 146 F.3d 815, 819 (10th Cir. 1998) (*per curiam*).[31]  Because the claims asserted in the petition for judicial review are ultimately invalid on the merits, the alleged irregularities in the state courts would not justify habeas relief even if Mr. Terry had standing.

## VI.      THE PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING

Mr. Terry has requested an evidentiary hearing.  Petitioner's Reply at p. 2.  The Court should deny the request.

The Petitioner is entitled to an evidentiary hearing only if proof of the habeas claims would justify relief.  *See Wise v. Commandant*, 82 Fed. Appx. 636, 638 (10th Cir. Dec. 2, 2003) (unpublished op.) (the standard for an evidentiary hearing in an action under 28 U.S.C. § 2241 is whether the allegations, if true, would entitle the petitioner to relief).  As discussed above, such proof would not support habeas relief and the Court should disallow an evidentiary hearing.  *See supra* pp. 2-23.

---

[31]      There the Tenth Circuit Court of Appeals rejected a constitutional challenge involving the timeliness of an appellate decision.  *United States v. Wiktor*, 146 F.3d at 819.  The court explained:

> Our cases have made clear that the remedy for a due process violation caused by inordinate delay is not immediate release from custody, but consideration of defendant's appeal.  Issuance of a conditional writ in state habeas cases only ensures that the appeal will be heard, it does not invalidate the underlying conviction.  Here, defendant has received his remedy, as we have reviewed the merits of his appeal.

*Id.*

VII.    RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons discussed above, the undersigned recommends denial of the petition for a writ of habeas corpus.  The Petitioner can object to this report and recommendation. *See* 28 U.S.C. § 636(b)(1) (2000).  To do so, Mr. Terry must file an objection with the Clerk of this Court by January 29, 2007.  *See* W.D. Okla. LCvR 72.1(a).  The failure to timely object would foreclose appellate review of the suggested ruling.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

VIII.   STATUS OF THE REFERRAL

The referral to the undersigned is terminated.

Entered this 8th day of January, 2007.


_____
Robert E. Bacharach
United States Magistrate Judge